**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Dated: March 16 2012

Mary Ann Whipple
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 11-31525 |
| | ) | |
| Peter Spooner, Jr., | ) | Chapter 13 |
| | ) | |
| Debtor. | ) | |
| | ) | JUDGE MARY ANN WHIPPLE |

### MEMORANDUM OF DECISION AND ORDER
### DENYING CONFIRMATION OF AMENDED CHAPTER 13 PLAN

This case came before the court for hearing on confirmation of Debtor's proposed Chapter 13 Plan [Doc. # 2] and on the objection to confirmation filed by RAK Corrosion Control Inc. ("Objection") [Doc. # 21]. Counsel for Debtor, the Chapter 13 Trustee, and counsel for RAK Corrosion Control Inc. ("RAK") appeared in person. RAK objects to Debtor's Plan to the extent that it provides for rejecting a non-compete agreement entered into by Debtor, arguing that the agreement is not executory.[1] The non-compete agreement, and state court litigation relating to the agreement, was also the subject of a hearing previously held on a motion for relief from stay filed by RAK. The parties agree that the court should rely on the record developed at that hearing in determining issues relating to RAK's objection to confirmation. For the reasons that follow, the court will sustain RAK's objection and deny confirmation of the Plan.

---

[1] In the Objection, RAK also argues that the Plan is not feasible as it does not take into account RAK's unsecured claim. However, RAK has since withdrawn its proof of claim filed in this case.

## BACKGROUND

Debtor was formerly employed by RAK. The terms and conditions of Debtor's employment were subject to a collective bargaining agreement between the International Brotherhood of Painters and Trades AFL-CIO District Council No. 6 ("the Union") and the Cleveland Chapter Painting and Decorating Contractors of America, Inc., to which RAK was a signatory. On December 29, 2008, Debtor executed a Confidentiality, Non-Disclosure and Non-Competition Agreement ("Agreement" or "the Non-Compete Agreement"). [Cr. Ex. 2, Tab 1 & attached Ex. A]. Pursuant to the Agreement, in consideration of his continued employment at RAK, Debtor agreed to not engage in any Competitive Activity or Competitive Act as described therein for a period of two years commencing on the date Debtor's employment is terminated, which "shall be extended to include any period of time during which [Debtor] engages in any activity constituting a breach of this Agreement and any period of time during which litigation transpires wherein [Debtor] is held to have breached this Agreement." [*Id.* at ¶¶ 1(f), 2(b)]. Debtor also agreed to hold confidential information in strictest confidence at all times. [*Id.* at ¶ 2(a)]. The Agreement provides that its "terms and conditions shall be in addition to any other terms and conditions agreed to by the parties or imposed by [RAK]. [*Id.* at p. 1]. It further provides that Debtor's duties and obligations under the Agreement shall survive the termination of Debtor's employment by either party, with or without cause and that the Agreement is the entire agreement with respect to the subject matter thereof. [*Id.* at ¶¶ 5 & 7].

In February 2010, RAK filed a complaint in the Lorain County, Ohio, Court of Common Pleas seeking injunctive relief against Debtor and another former employee in order to enforce the Non-Compete Agreement. RAK alleged in the complaint that Debtor's employment was terminated on May 13, 2009, after RAK discovered evidence indicative of Debtor's efforts to establish a competing enterprise. [*Id.*, Complaint at ¶ 9]. RAK further alleged that, in February 2010, it learned that Debtor was employed by DLC Janitorial Services, Inc. ("DLC") as a general foreman performing services covered by the Non-Compete Agreement. [*Id.* at ¶ 10]. Debtor filed a counterclaim seeking a declaration that the Non-Compete Agreement was void as it was signed under duress and was contrary to the terms of the parties' applicable collective bargaining agreements. [*Id.* at Tab 27, ¶¶86-89].

After several hearings, the state court entered a temporary restraining order enjoining Debtor from performing Competitive Activities, as described in the Non-Compete Agreement at any U.S. Steel facility, RAK's largest customer, located in the geographic region set forth in the Agreement. [*Id.* Tab 44]. After conducting a hearing on November 3, 2010, the state court entered an order finding Debtor in contempt and

banning him "from entering upon the premises of all U.S. Steel facilities, including any of its affiliates and from communicating with any U.S. Steel officers or employees during the pendency of this action." [*Id.* Tab L].

On March 23, 2011, Debtor filed a petition for relief under Chapter 13 of the Bankruptcy Code. In his Chapter 13 Plan, Debtor proposes to reject the Non-Compete Agreement. On June 29, 2011, the court granted RAK relief from the automatic stay for the limited purpose of permitting it to continue the state court action against Debtor in order to determine the validity of the Non-Compete Agreement and, to the extent it is found to be valid, to obtain injunctive relief.[2] Although it does not appear that a final judgment has been entered, on October 3, 2011, the state court entered an order granting RAK partial summary judgment on the state court defendants' counterclaim. [Doc. # 74, Ex. 1]. The state court concluded that the Non-Compete Agreement is not void. [*Id.* at 3].

## LAW AND ANALYSIS

The issue presented by the parties is whether the Non-Compete Agreement is an executory contract such that it can be rejected under 11 U.S.C. § 365(a). That subsection provides that "a trustee, [or in this case, a Chapter 13 debtor], subject to the court's approval, may assume or reject any executory contract. . . of the debtor." 11 U.S.C. § 365(a).

The Bankruptcy Code does not define "executory contract." A definition often quoted by courts is the "Countryman" definition: "a contract under which the obligations of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other." Countryman, *Executory Contracts in Bankruptcy: Part I*, 57 Minn. L. Rev. 439, 460 (1973). In *Terrell v. Albaugh (In re Terrell)*, 892 F.2d 469 (6th Cir. 1989), the court applied this definition in finding that a land installment contract was executory. The court noted that "legislative history indicates that Congress intended the term "executory contract" to be defined as a contract 'on which performance remains due to some extent on both sides'" and that "Congress apparently had in mind the [Countryman] definition of executory contracts." *Id.* at 471 (quoting S. Rep. No. 95-989, 95th Cong., 2d Sess. 58, reprinted in 1978 U.S.C.C.A.N. 5787, 5844; H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 347, reprinted in 1978 U.S.C.C.A.N. 5787, 5963, 6303).

The Sixth Circuit has stated, however, that this definition is "helpful but not controlling in the

---

[2] The motion for relief from stay was denied to the extent it sought relief to pursue damages and attorney fees or other rights to payment that could be asserted as a claim in this case.

resolution of what is an executory contract." *Rieser v. Dayton Country Club Co. (In re Magness)*, 972 F.2d 689, 694 (6th Cir. 1992) (citing *Chattanooga Mem'l Park v. Still (In re Jolly)*, 574 F.2d 349 (6th Cir. 1978) (hereinafter "*Jolly*")). In *Jolly*, the court articulated what is known as the "functional approach" to defining executory contracts. The court explained that the key to determining whether a contract is executory "is to work backward, proceeding from an examination of the purposes rejection is expected to accomplish," namely, it is expected to "relieve the debtor of burdensome future obligations during the period that he is trying to recover financially, and constitute a breach of the contract, making the other party to the contract a creditor with a claim which may be incorporated into the Plan and ultimately discharged." *Jolly*, 574 F.2d at 350-51. If they have already been accomplished, or if they cannot be accomplished through rejection, then the contract is not executory within the meaning of § 365(a). *See id.*

Under either the Countryman definition or the functional approach, the Non-Compete Agreement at issue in this case is not executory. While Debtor has a continuing obligation under the Agreement not to compete and to hold certain information in confidence, RAK's only obligation under the Agreement was to permit Debtor's continued employment at RAK. Debtor does not dispute the fact that he engaged in competitive activities that were proscribed by the Agreement and that his employment at RAK was terminated for this reason. As there is no question that Debtor's failure to refrain from engaging in competitive activities was a material breach, RAK has no continuing obligation under the Agreement. *See Software Clearing House, Inc. v. Intrak, Inc.*, 66 Ohio App. 3d 163, 170 (Ohio App. 1990) (explaining that a material breach discharges the obligations of the non-breaching party). Thus, under the Countryman definition, the Non-Compete Agreement is not an executory contract within the meaning of § 365. *Cf. In re Hughes*, 166 B.R. 103, 105 (S.D. Ohio 1994) (finding covenant not to compete was not executory under the Countryman definition where the debtor's employment had terminated prior to commencement of the bankruptcy case).

Nevertheless, citing *In re Ritchey*, 84 B.R. 474 (Bankr. N.D. Ohio 1988), Debtor argues that the Agreement is executory because RAK has continuing obligations under the collective bargaining agreement that it entered into with the Union and that Debtor contends was incorporated by reference into the Non-Compete Agreement. In *In re Ritchey*, the court considered whether a contract for the sale of a business was one entire contract that the Debtors could assume or reject or whether it was divisible into several separate contracts, some of which could be assumed and some rejected. Finding that resolution of the issue depended on the intent of the parties to the contract, the court found that the contract at issue was not divisible.

4

In this case, Debtor's argument is based upon language in the introductory paragraph of the Agreement that its terms and conditions "shall be in addition to any other terms and conditions agreed to by the parties or imposed by [RAK]." The court initially notes that the collective bargaining agreement involves different parties. It is a contract agreed to by RAK and the Union, not Debtor. Nevertheless, nothing in the language of this provision indicates an intent to incorporate the entire collective bargaining agreement into the Non-Compete Agreement. Rather, to the extent that this language refers to terms and conditions of the collective bargaining agreement, it is clear and unambiguous – the plain language merely clarifies that the terms and conditions of the Non-Compete Agreement are in addition to, and do not supersede or displace, any terms or conditions in the collective bargaining agreement. *See Blair v. McDonagh*, 177 Ohio App.3d 262, 278 (2008) (stating that where the language of a contract is clear and unambiguous, courts must simply give effect to the plain language of a contract).

Rejection of the Non-Compete Agreement also does not accomplish any purpose that rejection is expected to accomplish. By rejecting the Agreement, Debtor seeks to relieve himself of the obligation to not engage in competitive activities and, thus, relief from any order of the state court enjoining him from engaging in such activities. However, rejection does not terminate all of the rights and obligations of parties under a contract. *In re Noco, Inc.*, 76 B.R. 839, 844 (Bankr. N.D. Fla. 1987); *In re Hughes*, 166 B.R. at 105 (stating that 'rejection of a contract does not rescind a contract or the obligations found therein (e.g., a restrictive covenant)") . Rejection simply constitutes a breach of those obligations that is deemed to have occurred immediately before the date of filing the petition. *Id.* (citing 11 U.S.C. § 365(g)(1)). As the Sixth Circuit stated, although Congress allows debtors to reject executory contracts, they do so "only at the cost of any damages rejection may cause." *Jolly*, 574 F.2d at 351. Thus, the court in *In re Noco, Inc.*, explained:

> [R]ejection under the Bankruptcy Code only affects the monetary rights of the creditor. It does not disturb equitable, non-monetary rights that the creditor may have against the debtor because of the breach of contract. These rights include the creditor's right to seek an injunction so that the debtor can not breach the negative promise not to compete.

*In re Noco, Inc.*, 76 B.R. at 844; *see In re Annabel*, 263 B.R. 19, 28 (Bankr. N.D.N.Y. 2001) (finding creditor entitled to relief from the discharge injunction to pursue injunctive relief in state court to enforce a covenant not to compete where the debtor had rejected an executory contract that included such covenant). As such, relieving Debtor of the burdensome obligation of refraining from engaging in competitive activities cannot be accomplished by rejecting the Non-Compete Agreement, which would then result in no benefit to the bankruptcy estate. *See Phar-Mor, Inc. v. Strouss Bldg. Assoc.*, 204 B.R. 948, 953 (N.D. Ohio 1997)

(stating that "working backwards" under the functional approach, the court must determine whether the debtor has material unfulfilled obligations extending into the future and whether rejection might reasonably benefit the estate).

Furthermore, the second purpose identified in *Jolly* for rejecting a contract, that is, making the other party to the contract a creditor with a claim that may be incorporated into the Plan and ultimately discharged, also cannot be accomplished. As was the case in *Jolly,* Debtor had already breached the Agreement prepetition. Rejection, therefore, is not necessary to accomplish the purpose of making RAK a creditor with a claim in this case. Using the functional approach articulated by the Sixth Circuit in *Jolly,* because neither of the purposes of rejection can be accomplished, the court finds that the Non-Compete Agreement is not an executory contract that can be rejected in Debtor's Chapter 13 Plan.

**THEREFORE,** for the foregoing reasons, good cause appearing,

**IT IS ORDERED** that RAK's Objection [Doc. # 21] be, and hereby is, **SUSTAINED**; and

**IT IS FURTHER ORDERED** that confirmation of Debtor's proposed Chapter 13 Plan [Doc. # 2] be, and hereby is, **DENIED**; and

**IT IS FURTHER ORDERED** that Debtor is granted leave to file another proposed amended Chapter 13 plan on or before **April 19, 2012**; and

**IT IS FURTHER ORDERED** that a further confirmation hearing will be held on **May 22, 2012, at 2:00 p.m.**